-----------------------------x
                              :
UNITED STATES OF AMERICA      :
                              :
              versus          : Criminal Action Number
                              :
ARDIT FERIZI                  : 1:16-CR-42
                              :
              Defendant.      :
-----------------------------x

                              Washington, D.C.
                              September 23, 2016

        The above-entitled jury trial was continued
before the Honorable Leonie M. Brinkema, United
States District Judge.

        THIS TRANSCRIPT REPRESENTS THE PRODUCT
        OF AN OFFICIAL REPORTER, ENGAGED BY THE
        COURT, WHO HAS PERSONALLY CERTIFIED THAT
        IT REPRESENTS TESTIMONY AND PROCEEDINGS OF
        THE CASE AS RECORDED.

1

```
 1                    A P P E A R A N C E S

 2     FOR THE GOVERNMENT:

 3             UNITED STATES ATTORNEY'S OFFICE
               Brandon VanGrack, Esquire.
 4             Gregory Gonzalez, Esquire.
               2100 Jamieson Avenue
 5             Alexandria, VA 22314
               703-299-3700
 6             Email: Brandon.van.grack2@usdoj.gov

 7

 8     FOR THE DEFENDANT:

 9             OFFICE OF THE FEDERAL PUBLIC DEFENDER
               Elizabeth Mullin, Esquire.
10             Geremy Kamens, Esquire.
               Assistant Federal Public Defender
11             Office of the Federal Public Defender
               1650 King Street, Ste 500
12             Alexandria, VA 22314
               703-600-0879
13             Elizabeth_mullin@fd.org

14

15

16

17     OFFICIAL UNITED STATES COURT REPORTER:

18             MS. TONIA M. HARRIS, RPR
               United States District Court
19             Eastern District of Virginia
               401 Courthouse Square
20             Tenth Floor
               Alexandria, VA 22314
21             763-443-9034

22

23

24

25
                                                        2
```

**P R O C E E D I N G S**

2

09:14:52  3          THE DEPUTY CLERK: Criminal case number

09:14:53  4    1:16-CR-42, United States versus Ardit Ferizi.  Would

09:15:00  5    counsel please note their appearances for the record?

09:15:04  6          MR. VAN GRACK: Good morning, Your Honor.

09:15:06  7    Brandon Van Grack and Gregory Gonzalez on behalf of the

09:15:10  8    United States.

09:15:11  9          THE COURT: Good morning.

09:15:11  10          MS. MULLIN: Good morning, Your Honor.  Elizabeth

09:15:13  11    Mullin and Geremy Kamens on behalf Ardit Ferizi.

09:15:22  12          THE COURT:  We'll have our interpreter confirmed

09:15:25  13    while we're waiting for the defendant.

09:15:29  14          (Interpreter sworn.)

09:15:43  15          THE COURT:  Ms. Mullin, who is going to be

09:15:45  16    speaking for the defendant?

09:15:48  17          MS. MULLIN:  I am, Your Honor.

09:15:49  18          THE COURT:  All right.  So have you had enough

09:15:50  19    time to go over the presentence report yourself and with

09:15:53  20    your client?

09:15:54  21          MS. MULLIN:  Yes, Your Honor.

09:15:54  22          THE COURT:  All right.  Are there any factual

09:15:55  23    corrections, additions, deletions of any sort you want to

09:16:01  24    make to the report itself?

09:16:01  25          MS. MULLIN:  No, Your Honor.

| | | |
|---|---|---|
| 09:16:01 | 1 | THE COURT: All right. Now I know there's some |
| 09:16:05 | 2 | dispute about how the guidelines were calculated. The |
| 09:16:08 | 3 | probation office has calculated the offense level here as |
| 09:16:10 | 4 | a level 40. Because your client has received the |
| 09:16:14 | 5 | terrorism enhancement under 3A1.4 of the guidelines, his |
| 09:16:18 | 6 | criminal history is ranked at a level six. That |
| 09:16:20 | 7 | establishes an advisory guideline range of 360 months to |
| 09:16:24 | 8 | life. Although, the statutory maximum is 20 years of the |
| 09:16:30 | 9 | offense. |
| 09:16:31 | 10 | There are two counts of conviction here: Count |
| 09:16:33 | 11 | two, which is a material support count has a supervised |
| 09:16:40 | 12 | release term ranging from one year to life. The unlawful |
| 09:16:43 | 13 | access to computer, which is Count 3, the supervised |
| 09:16:48 | 14 | release range there is one to three years. The fine range |
| 09:16:50 | 15 | here is $25,000 to $250,000 and there's a 100 to 200 |
| 09:16:55 | 16 | dollars of special assessments because there are two |
| 09:16:56 | 17 | counts of conviction. Correct? |
| 09:16:58 | 18 | MS. MULLIN: Correct. |
| 09:16:59 | 19 | THE COURT: I'll hear first from the United |
| 09:17:01 | 20 | States. |
| 09:17:02 | 21 | MR. VAN GRACK: Your Honor, in this case the |
| 09:17:05 | 22 | Government is seeking a sentence of 25 years, which is the |
| 09:17:08 | 23 | most permitted by statute, because the defendant's conduct |
| 09:17:12 | 24 | has definitely put the lives of 1300 military members and |
| 09:17:17 | 25 | Government employees at risk. |

4

With the Court's permission, I would like to focus first on the 3553 factors because the guidelines, with one or two exceptions, are largely in agreement but there are significant disagreements between the parties on those 3553 factors.

THE COURT: All right.

MR. VAN GRACK: And I think reading these two position papers, it would almost seem like you're dealing with two different individuals and two different crimes. The Government represents that this is an individual who is a hacker who used those skills to support a terrorist organization and has put these 1300 lives at risk for the foreseeable feature.

The defense counsel is representing that this is simply a hacker who made a single mistake, was on drugs, and didn't realize what he was doing. And these two images -- there's no middle ground in terms of what the defendant's conduct was.

And so I would like to first discuss one of the representations in terms of the defendant's motive represents in his letter to the Court that he was not an ISIL supporter, he was not loyal to ISIL. But that's disconnected with the facts in this case and those facts come directly from the defendant's actions and his words.

In April 2015 he on his own develops a Website

09:18:29 1    to post ISIL videos and other propaganda.  This isn't a

09:18:35 2    single instance, this is not something that on a single

09:18:37 3    day he just developed.  He registers this Website, he

09:18:40 4    creates the infrastructure for the Website, he ensures

09:18:43 5    that it is able to post these videos, he has

09:18:45 6    communications with members of ISIL without this Website.

09:18:49 7    It's not just the creation of the Website, it is his words

09:18:52 8    with respect to that Website.

09:18:54 9          The Government provided some excerpts of

09:18:57 10   communications that the defendant had with individuals who

09:19:00 11   were against ISIL and challenged the defendant on why he

09:19:04 12   was allowing the Website -- why he was supporting the

09:19:06 13   Website that posted these videos.  And it is actually --

09:19:09 14   even though the Government only provided a few

09:19:12 15   conversations, these are debates, these are conversations

09:19:14 16   with multiple individuals that occurs over a lengthy

09:19:17 17   period of time.  And in these conversations the defendant

09:19:21 18   is constantly supporting ISIL, defending ISIL when

09:19:27 19   challenged about beheadings.  He explains that ISIL

09:19:29 20   wouldn't kill someone without justification.

09:19:31 21         Most importantly, there's a discussion where he

09:19:33 22   is challenged about a posting in March of 2015 by a group

09:19:37 23   called the Islamic State Hacking Division and a well known

09:19:42 24   ISIL recruiter and facilitator named Junaid Hussain.  And

09:19:44 25   in that post there was a kill list listing 100 service

6

09:19:48 1    members and their addresses.  And this individual

09:19:51 2    challenges the defendant on the justification why -- "How

09:19:55 3    could you justify this behavior?"  And the defendant says,

09:19:58 4    "Well those people, the U.S. Military, they're the ones

09:20:01 5    who are killing people in Iraq and Syria."

09:20:04 6         Perhaps what's most important about those

09:20:07 7    communications are that these are private communications.

09:20:09 8    This isn't something that was posted in a public forum.

09:20:12 9    This isn't something that was forwarded to ISIL.  These

09:20:16 10   are communications with multiple people where no one else

09:20:19 11   is aware of what he's saying.  And yet, in these

09:20:22 12   conversations, if he wasn't an ISIL supporter, he didn't

09:20:24 13   have to respond to them.  He could have said, "Well, I was

09:20:28 14   high one day.  I didn't know what I was doing."  But

09:20:29 15   instead he has a vigorous defense of ISIL in each and

09:20:33 16   every instance.

09:20:34 17        But it's not just the Website, as the Court is

09:20:36 18   aware, because during that period of time after he creates

09:20:40 19   this Website he decides that he wants to ratchet up that

09:20:44 20   support to ISIL to actually figuring out a way to assist

09:20:47 21   in their task, to assist in this harm.  And so on June

09:20:52 22   13th he hacks into a companies Website.  And on his own,

09:20:56 23   as he's looking through this data, he's trying to figure

09:21:00 24   out what information here can help ISIL.  And he knows

09:21:04 25   this already because he's seen the videos.  He saw that

7

March 2015 post from Junaid Hussain that had this kill list of 100 service members.  He's aware of the statements that ISIL has made before.  And so as he's looking through this customer data base, in his mind is, "What can I do to support ISIL?"  And so on his own he looks for e-mail addresses that end in .gov and .mil.  And he codes that information to identify ultimately the 1300 individuals who are members of the military and U.S. Government.  And as soon as he finds this information the first thing he does he reaches out to ISIL, he reaches out to Junaid Hussain.

And again, it's not just his actions but his words.  And the Government provided a transcript of those conversations that he had with Junaid Hussain.  And it's clear from those conversations what Junaid Hussain and Ardit Ferizi was going to do with this information.  They talk about creating a hit list, that this information would hit them hard.  To the extent there's any doubt in the defendant's mind of the purpose of what this information is, it's answered in that conversation with Junaid Hussain.

Defense counsel represents that this was again the defendant just bragging, that he just wanted to show off his hacking skills.  But the conversation with Junaid Hussain did not only occur on June 13th.  The

8

09:22:23  1  conversations continued days after.  They continue to talk

09:22:27  2  June 14th, June 15th trying to verify that this

09:22:30  3  information is accurate.  The defendant on his own reaches

09:22:34  4  out to Junaid Hussain, wants to know how things are in the

09:22:37  5  Islamic State.  And I think it's telling that on the day

09:22:41  6  that the Islamic State Hacking Division and Junaid Hussain

09:22:45  7  posted this information on August 11th, an individual

09:22:48  8  reaches out to Junaid Hussain and asks about the

09:22:52  9  whereabouts of Ardit Ferizi.  And Junaid Hussain says,

09:22:55  10  "He's been busy.  He's on our team."  And it is indicative

09:22:59  11  of the fact that this isn't something where the defendant

09:23:00  12  simply passed information and walked away, but this is a

09:23:03  13  collaboration.  This is an effort between Junaid Hussain

09:23:05  14  and Ardit Ferizi to harm these individuals.

09:23:08  15       The defendant, to justify his actions, explains

09:23:13  16  he asked the Court to believe a story in which there is a

09:23:19  17  journalist who wrote a false story about his support for

09:23:23  18  ISIL and he was mad, he was embarrassed he says that this

09:23:28  19  story falsely accused him of supporting ISIL.  And so he

09:23:29  20  goes to the U.S. Embassy and finds that the U.S. Embassy

09:23:33  21  is unable to assist him.  And that's the genesis of his

09:23:36  22  support for ISIL.

09:23:38  23       The Government submits that this is just a

09:23:39  24  nonsensical explanation.  He asked the Court to believe

09:23:43  25  that he supported ISIL because he was so mad at being

9

09:23:49  1    falsely accused of supporting ISIL.  It's indicative of

09:23:54  2    the defendant not taking responsibility for his conduct

09:23:57  3    and misrepresenting the motives for his conduct.  But,

09:24:01  4    motives are one piece.  The perhaps even larger piece here

09:24:05  5    is the actual harm.  There's again a large gap between the

09:24:09  6    Government's representations as to who was harmed and how

09:24:13  7    they were harmed in the defense counsel's representations.

09:24:15  8         And in this case, as the Government represents,

09:24:19  9    the information here on these 1300 people, this wasn't

09:24:23  10   publicly available information.  A lot of this information

09:24:26  11   -- in fact there's no evidence at all in the record that

09:24:28  12   this information, all this information was public.

09:24:30  13   There's no question that some of that information is

09:24:33  14   publicly available.  There's also no question that on the

09:24:36  15   Internet there's lots of information about us that maybe

09:24:39  16   perhaps we would otherwise not want to be available.  But,

09:24:42  17   that's not the facts in this case.

09:24:44  18        Even if they were, Your Honor, even if all this

09:24:47  19   information was publicly available, it misses the point

09:24:52  20   that all the information that was necessary was

09:24:55  21   information that would identify the person, who they

09:24:58  22   worked for, and where they lived because this was a hit

09:25:02  23   list.  The point of this list was to find these

09:25:04  24   individuals and harm them, "to strike out their nets."

09:25:08  25   Those are Junaid Hussain's words.  And so, even if -- the

                                                                    10

| | | |
|---|---|---|
| 09:25:12 | 1 | defense counsel says, "Well, there weren't social security |
| 09:25:15 | 2 | numbers." This wasn't about stealing money from these |
| 09:25:19 | 3 | people. This is about finding them and harming them. |
| 09:25:22 | 4 | And the defendant, in terms of the value of this |
| 09:25:24 | 5 | information, it's clear from the defendant's own words and |
| 09:25:27 | 6 | his own actions he says in his letter to the Court that |
| 09:25:30 | 7 | when he saw the post he felt bad for these people because |
| 09:25:34 | 8 | they were so scared. Well, if this information wasn't |
| 09:25:37 | 9 | sensitive why were they scared. What were they scared of |
| 09:25:41 | 10 | if this information was just floating on the Internet and |
| 09:25:44 | 11 | they were fully aware of it? |
| 09:25:46 | 12 | And in fact from his conversations with Junaid |
| 09:25:48 | 13 | Hussain it's the same thing. When the defendant finds |
| 09:25:50 | 14 | this information and provided it to Junaid Hussain, Junaid |
| 09:25:53 | 15 | Hussain doesn't say, "Well, thanks I have a few hundred |
| 09:25:56 | 16 | other names I'm working on, but I'll get to your list. |
| 09:26:00 | 17 | He's excited about it. His reaction. And the Court has |
| 09:26:02 | 18 | seen those conversations. This is something where this is |
| 09:26:05 | 19 | a big deal. They are aware of the fact that this |
| 09:26:07 | 20 | information is information that would be useful for people |
| 09:26:09 | 21 | who are unable to travel to a war zone and are seeking to |
| 09:26:13 | 22 | do harm here in the United States. |
| 09:26:14 | 23 | And this entire conversation on what the |
| 09:26:19 | 24 | information is it misses an even larger point, because |
| 09:26:22 | 25 | it's not what the information is but what they did with |

11

| | |
|---|---|
| 09:26:25 | 1 |
| 09:26:29 | 2 |
| 09:26:33 | 3 |
| 09:26:36 | 4 |
| 09:26:41 | 5 |
| 09:26:45 | 6 |
| 09:26:50 | 7 |
| 09:26:51 | 8 |
| 09:26:54 | 9 |
| 09:26:56 | 10 |
| 09:27:00 | 11 |
| 09:27:04 | 12 |
| 09:27:07 | 13 |
| 09:27:13 | 14 |
| 09:27:16 | 15 |
| 09:27:20 | 16 |
| 09:27:24 | 17 |
| 09:27:27 | 18 |
| 09:27:32 | 19 |
| 09:27:34 | 20 |
| 09:27:38 | 21 |
| 09:27:41 | 22 |
| 09:27:44 | 23 |
| 09:27:48 | 24 |
| 09:27:51 | 25 |

the information.  Which is, ISIL took these names and told the supporters to find them and harm them.  They have permanently put a target on the backs of these individuals.  And so, the truth is if anyones name and their location is on something called an "ISIL hit list," an "ISIL kill list," that alone is enough to invoke fear rightly so in those individuals.

This isn't a hypothetical situation.  Even in this district there's already been someone who was arrested for admitting for the fact that he drove by the homes of two individuals in Virginia whose names and addresses were on the kill list that Junaid Hussain posted in March of 2015.  And the notion that again it's just the name, it's just a posting, is, I think, captured by one of the victim letters.  Obviously I won't say the individuals name, but the individual says that she now lives in the state of fear when she interacts with Muslims and she feels guilty about that but she doesn't know exactly what -- when this harm will go away.  And most importantly in that letter she doesn't decry the fact that her e-mail address was used or phone number.  She says that its her name.  She says that she has a unique last name that just knowing that ISIL has marked her, just knowing her name is enough for an individual to find and locate her.

This disconnect between the harm that the

12

1    defendant's conduct has caused and between the parties, I

09:27:59 2    think, also drives their references to similar situated

09:28:02 3    defendants, similar sentences.  And as the Government can

09:28:06 4    see, this is not a case that is easy to button hold it,

09:28:09 5    easy to compare to other cases.  And part of that is

09:28:11 6    because of the number of victims.  It is rare that you

09:28:15 7    have a case where there are this number of individuals who

09:28:17 8    have been directly harmed by an individuals conduct.  And

09:28:21 9    part of it is also because of the medium he used.  We're

09:28:25 10   used to situations where an individual here in the United

09:28:28 11   States commits some sort of -- facilitate some kind of

09:28:34 12   violent act or travel to a war zone.  And because the

09:28:36 13   individual used his hacking skills into a computer he was

09:28:39 14   thousands of miles away.  But that doesn't change the fact

09:28:42 15   that at the core of what he did was provide information

09:28:46 16   that would allow others to facilitate an attack.

09:28:50 17          One of the cases that seems most analogous is

09:28:52 18   the *Chesser* case, which was here in this District where

09:28:54 19   the individual was sentenced to 25 years.  And there were

09:28:57 20   a number of ways the individual provided support to ISIL

09:29:01 21   as there is in this case.  But one of the main things that

09:29:03 22   *Chesser* did was provide information on nine individuals

09:29:06 23   and instruct people to go kill them.  And one of the main

09:29:10 24   differences is, whereas there were nine victims in the

09:29:12 25   *Chesser* case, here there are 1300.

13

There's another case in the Western District of New York, *Elfgeeh*, E-L-F-G-E-E-H. In which an individual a few months ago was sentenced to 22-and-a-half years. And like the defendant the individual posted propaganda. He also attempted to facilitate the travel of three individuals to Iraq and Syria. Two of those individuals were working, I believe, as FBI sources and never travelled. But again, you have a comparison of a facilitation of an attack that's someone who was located here but is still a facilitation.

The cases that the defendant talks about, I believe *Farrokh* and *Amin* are two of those cases. In each of those cases there are no victims. There are no victims that are identified in any case. For *Farrokh*, an individual who was trying to travel to Iraq and Syria. He never travelled there. No one was harmed by his conduct. That's not to say his conduct wasn't serious. But again, in this case we have 1300 victims.

I would like to just briefly talk about some of the characteristics of the defendant. Although it was in our position paper, there are two points that were not there that I would like to stress before the Court. One concerns the acceptance of responsibility. And I think it's a key point reading the defendant's letter to this Court, because it is indicative of someone who has failed

14

09:30:39 1  to accept responsibility for his conduct.  He blames

09:30:43 2  drugs.  He discusses this being sort of a momentary laps

09:30:48 3  of judgment and the facts are to the contrary.  And he

09:30:51 4  also comes up with really a nonsensical story to explain

09:30:55 5  why he got involved in ISIL in the first place.

09:30:57 6       The second point the Government would like to

09:30:59 7  raise concerns his criminal history.  And in his

09:31:03 8  submission paper he discusses that in 2013 he was in

09:31:08 9  trouble for hacking a Kosovo Government database and

09:31:11 10  received an alternative sentence.  And we would like to

09:31:15 11  submit to the Court what the Government has marked as

09:31:18 12  Government Exhibit 1.  It's been provided to defense

09:31:20 13  counsel before.  And I would not read from this document

09:31:25 14  because it concerns -- if I may.  Thank you.

09:31:32 15       THE COURT:  And you're filing it under seal?

09:31:36 16       MR. VAN GRACK:  Yes, Your Honor.  It's a

09:31:38 17  document from the Kosovo police.  And in it it details 10

09:31:44 18  different incidents, criminal incidents, involving the

09:31:47 19  defendant.  And the point of this is not to get into each

09:31:50 20  of those details, because the Government isn't fully aware

09:31:53 21  of those details.  But it's to bring to the Court's

09:31:57 22  attention that this is not someone who just in a single

09:31:58 23  instance hacked a Government database and was in trouble.

09:32:02 24  This is someone who, over multiple years, was engaged in

09:32:05 25  multiple actions including criminal activity more than

15

09:32:09  1    just hacking into a Government database.

09:32:12  2        And one of the reasons we bring this to your

09:32:14  3    attention, Your Honor, because one of the representations

09:32:17  4    in the defendant's position paper is that he is unlikely

09:32:19  5    to reoffend.  Well, the point is he's already reoffended

09:32:22  6    over and over and over again.  The defendant was already

09:32:25  7    given a second chance.  He received an alternative

09:32:28  8    sentence.  And he took that chance and instead he engaged

09:32:33  9    in hacking again but this time that hacking actually

09:32:36  10   harmed individuals.

09:32:37  11       THE COURT:  All right.  Just so I can understand

09:32:39  12   this exhibit.  It appears as though it addresses incidents

09:32:43  13   going back to 2011.  Is that -- am I reading that

09:32:45  14   correctly?

09:32:46  15       MR. VAN GRACK:  Yes, Your Honor.  And

09:32:47  16   admittedly, a lot of this is in Albanian.  But there's

09:32:50  17   enough in English, I think, to get the point across.

09:32:53  18       THE COURT:  The point is he would have been 15

09:32:53  19   years old at the time.

09:32:54  20       MR. VAN GRACK:  The reason why this is under

09:32:54  21   seal, all of this conduct was when he was a juvenile,

09:32:57  22   which is why we're not getting into the specifics of that

09:33:00  23   conduct.

09:33:01  24       THE COURT:  All right.

09:33:02  25       MR. VAN GRACK:  Your Honor, to briefly talk

                                                              16

about the guidelines.  As the Court has already reported, the probation office has calculated them to be an offense level 40 and criminal history six, which the Government agrees with.

There appear to be two points, two issues that the defense counsel has with respect to that calculation. The first is that there should not be two points awarded -- a two level adjustment under 2M5.3, because the defendant didn't intend or has reason to believe that his support would cause a violent act.  And I think the Government has addressed that in its prior points.

The larger question that defense counsel raises is they seek a downward departure under 4A1.3.  Arguing that the criminal history six overstates the defendant's criminal history.  The Government's position is that this downward departure should not be applied to terrorism cases.  Under 3A1.4 in the terrorist enhancement, individuals whose conduct is connected to a crime of terrorism automatically received this bump to criminal history number six.  And the downward departure in 4A1.3, the factors the Court are to consider is whether it overstates their criminal history or overstates their ability to reoffend.  Well, that's almost every terrorist because they are automatically moved to criminal history six.  And so under the defense counsel's interpretation in

17

1   almost every terrorism case, it eliminates that automatic

09:34:37   2   enhancement.  And so it actually eliminates the entire

09:34:39   3   purpose of that enhancement was to identify the

09:34:41   4   seriousness of a terrorism offense.

09:34:44   5        But even if the Court believes that it can be

09:34:47   6   applied in a terrorism case, the Government's position is

09:34:49   7   this is not the case for a downward departure to be

09:34:52   8   applied.  This is an individual that has permanently put

09:34:56   9   the lives of 1300 individuals at risk and this is also

09:35:00   10   someone who has shown that he is a reoffender and someone

09:35:03   11   who is likely reoffend again.  And for this reason the

09:35:06   12   Government ask that he be sentenced to 25 years.  Thank

09:35:08   13   you.

09:35:08   14        THE COURT:  Okay.  Thank you.  Ms. Mullin.

09:35:14   15        MS. MULLIN:  Your Honor, if it's okay I'll start

09:35:15   16   with the 3553(a) factors as well.

09:35:18   17        Your Honor, Mr. Ferizi wants the Court to know

09:35:21   18   that he renounces ISIL, he has never been loyal to ISIL,

09:35:25   19   and he does not embrace what ISIL stands for.  Throughout

09:35:27   20   this process from his extradition from Malaysia to this

09:35:31   21   country and up until here today he has expressed nothing

09:35:34   22   but respect for the laws of the United States.

09:35:36   23        It is important to remember that Mr. Ferizi was

09:35:38   24   just a teenager when he committed these offenses and he is

09:35:42   25   now doing everything he can to return to his family and

18

09:35:45  1    his community in Kosovo, who as the Court can see from the

09:35:49  2    letters submitted, love him and are waiting for him to

09:35:51  3    return.

09:35:51  4          Now Mr. Ferizi doesn't dispute that he was

09:35:55  5    active online.  And he spent most of his days online in

09:35:59  6    his dorm room in Malaysia.  And he doesn't dispute that he

09:36:05  7    made hyperbolic comments about ISIL to members of ISIL and

09:36:07  8    that he was interested in ISIL.

09:36:09  9          He also pursued pedophiles online, communicated

09:36:14 10    with romantic interest and donated to the Democratic party

09:36:18 11    of the United States.  We submit that his online

09:36:22 12    activities, though they do events a juvenile who was

09:36:27 13    bragging and showing off and trying to feel cool, we

09:36:32 14    submit that his online activities show that he was not

09:36:34 15    motivated by radical ideology.  And indeed he never

09:36:38 16    planned to go fight for ISIL as many materials support

09:36:41 17    defendants do.  He never made any real plans to fight or

09:36:45 18    to do anything other than sort of his virtual

09:36:49 19    communications with ISIL.  In fact, he rebuffed

09:36:55 20    invitations to go fight in Syria.

09:36:57 21          Now the Government calls his explanation for his

09:37:00 22    conduct nonsensical.  We agree it is nonsensical.  It is a

09:37:04 23    nonsensical because he was a confused teenager with

09:37:07 24    confused motivations.  The Government doesn't dispute that

09:37:09 25    there was a journalist in Kosovo that posted a piece about

19

Mr. Ferizi saying he went to go fight in Syria. This deeply embarrassed his family. And the Court can see that from the letters from Mr. Ferizi's mother and father they were embarrassed, they were ashamed.

Mr. Ferizi had just started a new university as a freshman, or their version of a freshman. He's 18 or 19 years old, he feels his social life is ruined, people are laughing at him and calling him a terrorist. And so, his motivation was nonsensical. It was a completely nonsensical juvenile, unconsidered response to then go and assist ISIL in the way he did and to sort of communicate with ISIL as a way to, in his mind, get back at the United States Embassy for not removing the smear post. And so it was nonsensical because he was a nonsensical misguided teenager who really didn't know what he was doing.

And so it's not that he's not -- he's not accepting responsibility. He accepts responsibility for his actions, but that truly is his explanation for what he did. And the Government is right it doesn't make sense because he was a juvenile. And so that was his motivation underscores that he really truly wasn't motivated by a deep-seated radical ideology.

Your Honor, in any case involving material support of a designated terrorist group like ISIL, it's not hard because of the horrible offenses perpetrated by

20

09:38:45  1   ISIL to assume the worse about a defendant and evaluate

09:38:48  2   his conduct by imagining the worse possible outcome that

09:38:48  3   could result from it no matter how remote the risk of that

09:38:56  4   outcome is.  And that's essentially what the Government

09:38:56  5   has done by stating that these 1300 victims, whose e-mail

09:39:00  6   address were sent, are marked as enemies of ISIL.

09:39:04  7        THE COURT:  Well, how do you address the

09:39:06  8   argument that here in Northern Virginia there apparently

09:39:10  9   has been evidence that -- that people on this list or at

09:39:13  10  least one person on this list, has in fact felt actual

09:39:18  11  threats?

09:39:21  12       MS. MULLIN:  This is -- we don't dispute that

09:39:21  13  the victims experienced fear and will continue to.  And

09:39:26  14  Mr. Ferizi has apologized for that and he will and he

09:39:30  15  should be punished for that.  However, the reality of it,

09:39:32  16  if you look at what he did calmly and soberly, but the

09:39:36  17  reality of the information he sent really could not

09:39:38  18  facilitate an individual specific attack.  He did not send

09:39:42  19  addresses.  He did not send home addresses.  He did not

09:39:46  20  send work addresses.  He did not send specific whereabouts

09:39:50  21  as to where these people might be in any given day.

09:39:53  22       As so, he did send passwords, but of course that

09:39:56  23  information is moot now as the passwords has been changed.

09:39:59  24  So, while the individuals rightly and understandably

09:40:05  25  experience fear, the information that he sent, if you

                                                              21

09:40:10   1    really think about it, could not anymore than any other

09:40:13   2    information out there in the world, could not facilitate

09:40:16   3    or assist in a specific attack on any one individual. The

09:40:20   4    value of the material that he sent is in its propaganda's

09:40:26   5    message. And I think that there's a distinction there in

09:40:28   6    that what he did supported propaganda, but what he did not

09:40:34   7    support or facilitate or wasn't even able to facilitate a

09:40:37   8    specific violent attack.

09:40:38   9    And so that distinction, I think, is important

09:40:41  10    when we think about material support cases because it's

09:40:43  11    different than someone who targets a location and gives

09:40:47  12    specific information that can assist in an actual physical

09:40:51  13    attack on an individual on a specific location.

09:40:55  14    So what he gave essentially -- I mean anyone can

09:40:57  15    look on the Internet and find a name. And unlike Adam

09:41:01  16    Chesser he didn't send an address or a where about, or a

09:41:06  17    time, or a method. And so I think there is a distinction

09:41:10  18    there when you really consider the information he sent and

09:41:13  19    the value of it.

09:41:13  20    Again, Mr. Ferizi does not mean to undermine the

09:41:24  21    fear that the victims experienced. I don't think I -- I

09:41:28  22    take issue with the idea he hasn't accepted

09:41:32  23    responsibility. He has in many ways and in many ways that

09:41:36  24    are submitted in our under sealing filing, in our redacted

09:41:39  25    filing. And he will be punished for the harm that he

22

09:41:43 1    committed, which is the psychological harm and the

09:41:46 2    propaganda value of the information or message that he

09:41:52 3    sent.  But I submit that he shouldn't be punished for a

09:41:55 4    harm that he has not caused, a speculative and remote

09:41:57 5    harm.

09:41:57 6         Materials support an extraordinary broad statute

09:42:01 7    and it encompasses an extraordinarily broad amount of

09:42:04 8    conduct.  And in some cases defendants who are convicted

09:42:07 9    commit specific acts of violence themselves or intend to

09:42:12 10   go fight for -- intend to fight in Syria for ISIL or

09:42:15 11   elsewhere and seek to join terrorist groups.

09:42:19 12        This is not one of those cases.  Mr. Ferizi was

09:42:22 13   existing in a totally virtual world.  He was a teenager.

09:42:26 14   He never intended to fight for ISIL.  He never intended to

09:42:29 15   commit or assist in a violent attack on any one

09:42:32 16   individual.  And for those reasons we submit that the

09:42:34 17   sentence we requested of 72 months is appropriate.

09:42:37 18        Briefly, with respect to the guidelines, we

09:42:42 19   agree that the terrorism has been applied technically.

09:42:46 20   However, there's nothing in the guidelines to suggest that

09:42:49 21   4A1.B3 would preclude the Court from granting a downward

09:42:55 22   departure in terrorism cases.  And while Mr. -- Mr. Ferizi

09:42:58 23   has never disputed that he engaged in hacking activities

09:43:03 24   as a youth, as a juvenile, in Kosovo, as the Court knows,

09:43:05 25   he didn't serve any time for those.  So technically under

23

09:43:06  1    the guidelines he would be in category one.

09:43:09  2         Additionally, Your Honor, the reason why I think

09:43:14  3    4A1.3 could apply to terrorism cases is because the

09:43:17  4    terrorism enhancement itself is so broad.  It clumps

09:43:22  5    together all defendants accused of terrorism regardless of

09:43:25  6    distinctions in their level -- the level of their material

09:43:29  7    support, the quality of their material support, the

09:43:30  8    duration of their support of a terrorist organization.

09:43:35  9    And so that's why I think that a guideline such as 4A1.3

09:43:38  10   does apply in cases where the terrorism enhancement is so

09:43:42  11   draconian and so broad as to sweep all defendants accused

09:43:46  12   of terrorist activity into its net.

09:43:48  13         All right.  Thank you.

09:43:50  14         THE COURT:  All right.  Are there any victims

09:43:53  15   who want to be heard?

09:43:55  16         For the record, the Court has reviewed the

09:43:57  17   numbers of letters that were submitted by the Government

09:44:01  18   in supports of its position as well as the letters that

09:44:05  19   were submitted on behalf of Mr. Ferizi.  All right, Mr.

09:44:09  20   Ferizi come up to the lectern.

09:44:17  21         THE DEFENDANT:  Yes, Your Honor.

09:44:17  22         THE COURT:  This is your opportunity to say

09:44:19  23   anything you would like the Court to consider before the

09:44:22  24   sentence is imposed.

09:44:22  25         THE DEFENDANT:  Yes, Your Honor.  I feel so bad

24

09:44:24  1    for what I did.  I take full responsibility for that.  And

09:44:28  2    I'm very sorry for what happened for making people scared.

09:44:31  3    So that's what I have to say.

09:44:34  4            THE COURT:  Do you have any true understanding

09:44:38  5    of what you actually did?

09:44:40  6            THE DEFENDANT:  Yes, Your Honor.

09:44:41  7            THE COURT:  And I'm still not sure.  Why did you

09:44:43  8    do it?

09:44:44  9            THE DEFENDANT:  I don't know, Your Honor.  Doing

09:44:48 10    something fast.  It wasn't something like -- it was

09:44:51 11    something -- happened very fast.

09:44:53 12            THE COURT:  It didn't happen that fast.  You're

09:44:56 13    communicating back and forth over a period of time, aren't

09:44:59 14    you?

09:44:59 15            THE DEFENDANT:  Yes, Your Honor.  It's coming

09:45:01 16    from 2015.  Usually it starts in March.  I started to chat

09:45:05 17    with a girl.  She was supporting ISIS online and then I

09:45:11 18    got involved in -- in their chats.  So, yeah.

09:45:17 19            THE COURT:  Well, this was a case where it

09:45:19 20    wasn't a one time incident.  You had plenty of time to

09:45:22 21    think about what was going on.  Now I am not insensitive

09:45:27 22    to the fact that you're only 20 years old.  You obviously

09:45:30 23    have a certain talent for working on the computer.  You've

09:45:34 24    been able to hack into Government databases at least since

09:45:38 25    the age of 15.

And I think your youth and also the significant

mental health information, which was provided by the

Government, are factors that it is appropriate for the

Court to consider.  At the same time you are 20 years old

so you're not a child any longer.  And you had the

opportunity when you had those first rounds of issues with

the courts in Kosovo to have this issue addressed.

          I recognize that there's much science these days

that the brain of human beings is not fully developed

frankly until people are in their mid-20's which explains,

in some peoples eyes, the reason why younger people tend

to be involved in a lot of criminal activity.

          But, that can't excuse this kind of conduct.

And I think the Government's representations about the

impact that this kind of conduct had on 1300, absolutely

innocent, victims cannot be ignored by the Court.  It's

also extremely important to send messages to other young

people like yourself who has skills with computers that

playing around with computers is not a game.  The hacking

into computer systems is becoming a major problem

throughout the world.  And in fact, you know, cyber

warfare has become almost the latest and most serious area

of concern for many people in Government.

          And so what you did was extremely serious.  And

the Court feels that the sentence has to reflect that.

                                                      26

And so, I am going to impose a sentence that is a slight

variance from the guidelines.  I'm going to accept the

guidelines as they've been calculated, because I think

they are correct given the facts of this case.  But,

because of your youth and what are some real serious

mental health issues, some minor variance is appropriate.

Not merely as much as defense counsel requested, however.

The Court also did look at comparators.  The

ones that the Government and defense counsel gave the

Court.  I agree with the Government that the comparators

whom the defense identified *Amin*, *Farrokh*, and *Coffman*

none of those cases involved third party victims the way

this one did.  And although the defense has argued that

the victims are not victims as -- as much as in the other

case that the Government has cited, just having your name

on a list knowing that you've been identified to a

terrorist group, in my view, is sufficiently terrorizing

for those people on the list.  And their letters certainly

attest to that fact.

And the one person who has a very unique name,

in particular, mentions that maybe the only name in that

particular area would make it very easy to find that

person.  And the fact that they are basically on a hit

list making them basically targets is very, very serious.

Because of the need, among other things, for

27

| 09:48:31 | 1 | general deterrence, the need to make sure this defendant |
| 09:48:34 | 2 | is deterred from such future conduct, given his track |
| 09:48:37 | 3 | record going back five or six years with hacking, the |
| 09:48:40 | 4 | Court is satisfied that a total sentence of 240 months is |
| 09:48:44 | 5 | sufficient but not greater than necessary to achieve the |
| 09:48:47 | 6 | purposes of Section 3553(a). That sentence is composed of |
| 09:48:52 | 7 | 180 months on the material support count to be followed by |
| 09:48:56 | 8 | 60 months consecutive on the unlawful access to protected |
| 09:49:03 | 9 | computer information for a total of 240 months. |
| 09:49:07 | 10 | Now the defendant will be given credit for the |
| 09:49:09 | 11 | time he has been serving since October 12, 2015 when he |
| 09:49:13 | 12 | was arrested in Malaysia. At the completion of the 240 |
| 09:49:19 | 13 | month sentence, the defendant will serve a period of 10 |
| 09:49:21 | 14 | years of supervised release on Count 2 and a period of |
| 09:49:25 | 15 | three years of supervised release concurrent on Count 3. |
| 09:49:30 | 16 | The terms and conditions of your supervised |
| 09:49:33 | 17 | release, Mr. Ferizi, are first of all your uniformed good |
| 09:49:37 | 18 | behavior. That means you're not to violate any federal, |
| 09:49:40 | 19 | state, or local laws while on supervision. Do you |
| 09:49:43 | 20 | understand that? |
| 09:49:43 | 21 | THE DEFENDANT: Yes, Your Honor. |
| 09:49:44 | 22 | THE COURT: Secondly, you have to comply with |
| 09:49:45 | 23 | all of the conditions of supervision, which will be |
| 09:49:48 | 24 | explained to you by the probation office and explained to |
| 09:49:52 | 25 | you by them as well. Do you understand that? And it will |

28

| | | |
|---|---|---|
| 09:49:52 | 1 | be on the judgment order.  Do you understand? |
| 09:49:54 | 2 | THE DEFENDANT:  Yes, Your Honor. |
| 09:49:55 | 3 | THE COURT:  Now there are a series of special |
| 09:49:56 | 4 | conditions.  The first is, you will have to satisfactorily |
| 09:49:59 | 5 | participate in such mental health treatment as directed by |
| 09:50:02 | 6 | the probation office with an emphasis on |
| 09:50:07 | 7 | deradicallization.  You will have to take any medication |
| 09:50:09 | 8 | and submit to any programs as directed by the probation |
| 09:50:13 | 9 | office.  You must waive privacy rights that you have to |
| 09:50:14 | 10 | the mental health treatment so that probation officers can |
| 09:50:17 | 11 | monitor your progress and the Court will waive any cost of |
| 09:50:21 | 12 | that program.  Do you understand that? |
| 09:50:22 | 13 | THE DEFENDANT:  Yes, Your Honor. |
| 09:50:23 | 14 | THE COURT:  Secondly, you must be drug free. |
| 09:50:25 | 15 | You will have to submit to drug testing in such in or |
| 09:50:29 | 16 | outpatient drug treatment as the probation office directs. |
| 09:50:33 | 17 | Do you understand that? |
| 09:50:33 | 18 | THE DEFENDANT:  Yes, Your Honor. |
| 09:50:34 | 19 | THE COURT:  You have to waive any privacy rights |
| 09:50:35 | 20 | that you have to the drug treatment program so it can be |
| 09:50:37 | 21 | monitored by the probation office and the Court will again |
| 09:50:40 | 22 | waive the cost of that program.  Do you understand? |
| 09:50:42 | 23 | THE DEFENDANT:  Yes. |
| 09:50:43 | 24 | THE COURT:  You are not permitted to have any |
| 09:50:45 | 25 | contact or communications whatsoever with any known |

29

09:50:49  1  terrorist, terrorist organizations, or any known hackers.

09:50:54  2  If it is determined that you have had such communication

09:50:57  3  whether it's by the Internet, by telephone, by letter in

09:51:01  4  any respect, you're in violation.  Do you understand that?

09:51:03  5          THE DEFENDANT:  Yes, Your Honor.

09:51:04  6          THE COURT:  You cannot possess or use any

09:51:07  7  computer without having received permission from the

09:51:12  8  probation office and you will have to submit to such

09:51:14  9  monitoring technology as exist at the time you're released

09:51:19  10  so that the probation office can monitor any

09:51:20  11  communications you might have.  Do you understand that?

09:51:22  12          THE DEFENDANT:  Yes, Your Honor.

09:51:22  13          THE COURT:  All right.  And lastly, you have

09:51:25  14  to comply with any orders from the immigration authorities

09:51:29  15  as to your deportation.  Do you understand that?

09:51:31  16          THE DEFENDANT:  Yes, Your Honor.

09:51:32  17          THE COURT:  If deported from the United States,

09:51:34  18  you are not allowed back in this country for any reason

09:51:37  19  whatsoever during that 10 year period.  Should you return

09:51:41  20  to the United States in that 10 year period, you will have

09:51:43  21  two problems:  One, you're in violation of this Court's

09:51:46  22  sentencing order and could be sentenced back to prison for

09:51:48  23  up to 10 years.  Do you understand that?

09:51:49  24          THE DEFENDANT:  Yes, Your Honor.

09:51:50  25          THE COURT:  And secondly, the Government could

09:51:53   1   prosecute you for a new and separate crime called "illegal

09:51:55   2   reentry after deportation" with a violent felony

09:51:58   3   conviction on your record.  Do you understand that?

09:52:00   4           THE DEFENDANT:  Yes, Your Honor.

09:52:00   5           THE COURT:  The Court finds, given your

09:52:02   6   financial situation -- oh, there is an issue about

09:52:05   7   restitution in this case, isn't there, from the victim?

09:52:08   8           MR. VAN GRACK:  Yes, Your Honor.

09:52:10   9           THE COURT:  Is there a restitution order that's

09:52:13  10   been prepared?

09:52:13  11           MR. VAN GRACK:  No, it has not been prepared,

09:52:15  12   Your Honor.

09:52:15  13           THE COURT:  Was there a reason why it is not

09:52:17  14   done?

09:52:17  15           MR. VAN GRACK:  No.  Unfortunately, the victim

09:52:18  16   information, the specific victim information was late in

09:52:23  17   being passed to the probation office and so the Government

09:52:26  18   has not --

09:52:26  19           THE COURT:  What's the Government's position?

09:52:28  20   My understanding it was in the plea agreement.  Wasn't

09:52:31  21   there an agreement to the restitution?

09:52:33  22           MR. VAN GRACK:  Well, in the statements of facts

09:52:37  23   as well, Your Honor, I believe it is not contested.  It

09:52:37  24   was over $40,000 in damages.

09:52:41  25           THE COURT:  The amended petition which has, I

09:52:44  1   think, $100,000 for good will, I would not find

09:52:49  2   appropriate. I don't think it's adequate documentation

09:52:52  3   for the good will issue, is there?

09:52:53  4            MR. VAN GRACK: The Government will agree with

09:52:55  5   that position, Your Honor.

09:52:56  6            THE COURT: All right. Ms. Mullin, have you had

09:52:58  7   a chance to discus the restitution issue with your client?

09:53:01  8            MS. MULLIN: Yes, in general terms. I will do

09:53:02  9   so when a restitution order is submitted.

09:53:05 10            THE COURT: Is that going to be done today, the

09:53:07 11   restitution order?

09:53:08 12            MR. VAN GRACK: Yes, Your Honor.

09:53:08 13            THE COURT: All right. I want to make sure we

09:53:10 14   get that taken care of. And Mr. Ferizi, you understand

09:53:13 15   than an additional condition of your supervision is that

09:53:15 16   you're going to have to make a good faith effort to repay

09:53:19 17   that money to the Arizona company whose computers you

09:53:23 18   hacked?

09:53:24 19            THE DEFENDANT: Yes, Your Honor.

09:53:25 20            THE COURT: That's part of your plea agreement.

09:53:27 21   Do you remember that?

09:53:27 22            THE DEFENDANT: Yeah, I think so, yeah.

09:53:29 23            THE COURT: I think?

09:53:31 24            THE DEFENDANT: I think, yes, I saw it.

09:53:33 25            THE COURT: All right. Because of the amount of

09:53:34  1    restitution and the length of this sentence, the Court

09:53:37  2    finds the defendant does not have the financial resources

09:53:40  3    to pay the cost of incarceration, cost of supervision, or

09:53:43  4    any of the statutory fines.

09:53:45  5            However, there are $200 in special assessments.

09:53:48  6    Those must be paid.  The defendant waived his right to

09:53:51  7    appeal both his conviction and his sentence and his plea

09:53:55  8    agreement as long as the sentence was not higher than the

09:53:57  9    statutory maximum.

09:53:59  10           However, I still want to make sure Counsel you

09:54:02  11   talk with your client about whether he wants to file an

09:54:04  12   appeal.  And obviously if he does, he will need to file

09:54:07  13   it.  All right.  Is there anything further we need to

09:54:09  14   address?

09:54:10  15           MR. VAN GRACK:  No, Your Honor.

09:54:10  16           THE COURT:  Anything further from defense

09:54:12  17   counsel?

09:54:13  18           MS. MULLIN:  No, Your Honor.

09:54:14  19           THE COURT:  All right.  The defendant is

09:54:16  20   remanded.

09:54:17  21

09:54:18  22          **(Proceedings adjourned at 9:54 a.m.)**

          23

          24

          25

                                                                  33

1                    CERTIFICATE OF REPORTER

2

3          I, Tonia Harris, an Official Court Reporter for

4    the Eastern District of Virginia, do hereby certify that I

5    reported by machine shorthand, in my official capacity, the

6    proceedings had and testimony adduced upon the Sentencing

7    in the case of the **UNITED STATES OF AMERICA versus ARDIT**

8    **FERIZI**, 1:16-CR-42, in said court on the 23rd day of

9    September, 2016.

10         I further certify that the foregoing 34 pages

11   constitute the official transcript of said proceedings, as

12   taken from my machine shorthand notes, my computer realtime

13   display, together with the backup tape recording of said

14   proceedings to the best of my ability.

15         In witness whereof, I have hereto subscribed my

16   name, this the September 26, 2016.

17

18

19

20

21   _____
     Tonia M. Harris, RPR
22   Official Court Reporter

23

24

25

                                                              34