IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 1:16-CR-00042 |
| | ) | Hon. Leonie M. Brinkema |
| ARDIT FERIZI, | ) | |
| | ) | |
| Defendant. | ) | |

**ARDIT FERIZI'S REPLY TO GOVERNMENT'S RESPONSE
TO ORDER TO SHOW CAUSE**

Yesterday, the Court issued an Order to Show Cause to the government, that it "show cause within fourteen days why the Court's December 3, 2020 Order [Dkt. No. 105] granting compassionate release to defendant not be reaffirmed." Order [Dkt. No. 130.] The government filed a response [Dkt. No. 132] today. Mr. Ferizi files this reply to the government's response.

The United States asserts that it "did not ask the Fourth Circuit to consider the new charges on the merits of this Court's release order[.]" Gov't Response at 2 [Dkt. No. 132.] On the contrary, the government's appellate opening brief discussed the new allegations against Mr. Ferizi repeatedly and in detail. *See* Opening Br. of the United States at 17, 37, 38, 38 n.16 [Fourth Circuit Case No. 20-7830, Dkt. No. 17]. Moreover, the issue of the new criminal charges dominated the Fourth Circuit oral argument on the government's appeal of this Court's order of compassionate release to Mr. Ferizi, and also formed the basis of the Fourth Circuit's order remanding to this Court. *See* Fourth Circuit Order (per curiam) [Dkt. No. 121]. For

1

the government to claim now that the new charges, and current absence thereof, is unimportant, does not pass muster.

The United States also asserts that it dismissed the new indictment against Mr. Ferizi "for reasons wholly unrelated to the vindictiveness claim[.]" Gov't Response at 2. [Dkt. No. 132.] The government moved the dismiss the indictment on the morning of the motions hearing on Mr. Ferizi's motion to dismiss for vindictive prosecution, without offering any alternative explanation either then, or now. Regardless, there are no new charges now, and no conviction on the allegations the United States levied against him after this Court granted his motion for compassionate release in December 2020. *See* Order [Dkt. No. 105]. Moreover, there is a presumption of innocence (on charges that Mr. Ferizi no longer faces).

Furthermore, ultimately nothing undermines the government's hyperbolic concerns about Mr. Ferizi's purported dangerousness more than the government's own actions since 2018. First, sometime between 2018 and 2020, the BOP—a division of the Department of Justice—transferred Mr. Ferizi from maximum security USP Terre Haute to medium security Gilmer FCI, where Mr. Ferizi was housed when he filed for and was granted compassionate release. [Dkt. No. 101 at 1.] As the government acknowledged in its opposition to Mr. Ferizi's motion for compassionate release, the BOP's own risk assessment tool determined Mr. Ferizi was "low risk." Order at 8 [Dkt No. 105.] These determinations were made despite the fact FBI Agent Reid had been obtaining Mr. Ferizi's correspondence in 2018 from the BOP directly. *See* Gov't Exh. D at 8 [Dkt. No. 125-6.] The government knew this information for

multiple years, and took no action (other than moving Mr. Ferizi to a lower-security prison) before this Court issued its Order.

That is, despite its knowledge of these allegations since 2018, the government pursued no investigation or prosecution for two years, and only did so after the Court granted compassionate release to Mr. Ferizi. It is not just that the government did not investigate or prosecute Mr. Ferizi on the allegations; it made no effort whatsoever to mitigate any alleged potential harms, despite the fact the fact that the FBI had actual access to Mr. Ferizi's communications from prison. The government's added arguments about dangerousness here simply do not comport with its own actions.

As to the United States's new arguments about the status of the COVID-19 pandemic, as an initial matter, the United States should not be able to raise these arguments after circumventing this Court's release order for more than 15 months by indicting Mr. Ferizi in California, and then voluntarily dismissing that indictment without explanation. Moreover, the pandemic continues, there is a new subvariant circulating, and the pandemic remains considerably more dangerous within a prison environment than without, even for persons who are vaccinated. The government argues that this Court should not affirm its compassionate release Order because "the defendant has thankfully weathered the storm" of the pandemic. Gov't Response at 2 [Dkt. No. 132.] Of course, that Mr. Ferizi was made to "weather the storm" in prison was caused by the government's machinations: After both this Court and the Fourth Circuit denied the government's request for a stay of this Court's Order, and while

3

Mr. Ferizi was on the brink of being removed to Kosovo pursuant to the Order, the government filed charges in the Northern District of California, which effectively stayed execution of this Court's Order. Those charges have now been inexplicably dismissed upon the government's motion.[1] Under these circumstances, the government should not benefit from the fact that luckily, Mr. Ferizi survived that surge of the pandemic.

Moreover, the government is wrong that the danger to him is entirely abated. Since the onset of the pandemic, new variants of COVID-19 have emerged that continue to fuel new infections.[2] The latest variant to appear, Omicron, provides a new and sobering example of the significant damage a new variant can cause and evidences the continued threat to individuals already at risk for more severe cases of COVID. Omicron is two to three times as contagious as the prior variant, Delta, which itself was already much more contagious than the original strain of the virus;[3] and Omicron even infects the vaccinated.[4] Because of these high levels of contagiousness,

---

[1] The government declines to explain why the charges were dismissed, though it asserts that the charges were not dismissed in response to Mr. Ferizi's vindictive prosecution motion. The inescapable alternative conclusion then is that the charges were dismissed because there is insufficient evidence that Mr. Ferizi committed those offenses.

[2] *See, e.g.*, Laura Ungar, *Expect more worrisome variants after Omicron, scientists warn*, L.A. Times (Jan. 18, 2022), https://www.latimes.com/world-nation/story/2022-01-18/expect-more-worrisome-variants-after-omicron-scientists-warn.

[3] *See* Carl Zimmer & Andrew Jacobs, *Omicron: What We Know About the New Coronavirus Variant*, N.Y. Times (Jan. 3, 2022), https://www.nytimes.com/article/ omicron-coronavirus-variant.html.

[4] *See, e.g.*, Sara Reardon, *How well can Omicron evade immunity from COVID vaccines* (Feb. 2, 2022), Nature, https://www.nature.com/articles/d41586-022-00283-4 (study findings showing "Omicron variant is much better than Delta at breaking through the immunity conferred by vaccines," even with a booster); Emily Head & Dr Sabine L. van Elsland, *Omicron largely evades immunity from past infection or two vaccine doses*, Imperial College London (Dec. 17, 2021), https://www.imperial.ac.uk/news/232698/omicron-largely-evades-immunity-from-past/

Omicron was able to become the source for almost all new COVID infections in the United States in a matter of weeks.[5] Omicron's contagiousness, coupled with its ability to infect the vaccinated and those who had previously been infected, caused an unprecedented surge in COVID-19 cases, far and away surpassing any prior infection and hospitalization totals.[6] The Omicron surge set new records for deaths from COVID, particularly among the "medically vulnerable."[7] Omicron's ability to evade vaccines portends a dangerous future as new variants are likely to continue to develop. Indeed, within the past weeks, experts have warned of yet another surge of a COVID variant—the BA.2 variant—which currently makes up 23% of new COVID cases and has been tripling in prevalence every two weeks.[8]

Courts have recognized that vaccination status should never preclude finding that a defendant has established extraordinary and compelling reasons for release, at least where a COVID-19 infection would pose significant risk to his health. *See,*

---

("The new report (Report 49) from the Imperial College London COVID-19 response team estimates that the risk of reinfection with the Omicron variant is 5.4 times greater than that of the Delta variant."); *see also Omicron Variant: What You Need to Know*; CDC (updated Feb. 2, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (warning that "breakthrough infections in people who are vaccinated are likely to occur" with Omicron).

[5] *Variant Proportions*, CDC, https://covid.cdc.gov/covid-data-tracker/#variant-proportions (last visited Mar. 9, 2022).

[6] *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory*, CDC, https://covid.cdc.gov/covid-data-tracker/#trends_dailycases (last visited Mar. 9, 2022).

[7] Fernit Nirappil & Dan Keating, *Covid Deaths Highest in a Year as Omicron Targets the Unvaccinated and Elderly* (Feb. 8, 2022), Wash. Post., https://www.washingtonpost.com/health/2022/02/08/omicron-deaths-covid/.

[8] *COVID cases predicted to rise in coming weeks because of new BA.2 variant,* ABC News, https://abcnews.go.com/Health/covid-cases-predicted-rise-coming-weeks-ba2-variant/story?id=83501592.

*e.g.*, *United States v. Johnson*, No. ELH-17-322, 2021 WL 5494527 at *12 (D. Md. Nov. 23, 2021) ("[D]efendant's vaccination status [of receiving 2 doses] 'does not negate that his underlying health conditions make him eligible for compassionate release.'" (citation omitted)); *United States v. Palmer*, No. PWG-13-623, 2021 WL 3212586, at *3 (D. Md. July 29, 2021) ("It is impossible to predict the impact of the vaccines on future strains of the virus, just as it is impossible to predict the impact of COVID-19 on [defendant's] specific medical issues."). In short, the status of the pandemic in 2022 is not a reason for the Court to reverse course in this case.

The remainder of the United States's arguments are repeated recitations of the same arguments this Court has already considered, and rejected, within the sound exercise of its considerable discretion, as the Court has explained at length. *See* Order [Dkt No. 105]; Order Denying Stay [Dkt. No. 114]. This Court acted well within its broad discretion when it granted Mr. Ferizi's motion under 18 U.S.C. § 3582(c)(1). *See United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021), *cert. denied*, --- S.Ct. ----, 2021 WL 4733616 (Oct. 12, 2021). In addition, the Court explained its decision more than adequately. *See United States v. High*, 997 F.3d 181 (4th Cir. 2021).

For all the reasons the Court has previously explained, and that Mr. Ferizi has previously argued both here and in response to the government's previous appeal, he respectfully asks the Court to reaffirm its order granting compassionate release.

Respectfully submitted,

Ardit Ferizi
By Counsel

_____/s/_____
Elizabeth Mullin
Virginia Bar Number 86668
Assistant Federal Public Defender
Caroline S. Platt
Admitted Pro Hac Vice
Appellate Attorney
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
(703) 600-0879 (T)
(703) 600-0880 (F)
elizabeth_mullin@fd.org
caroline_platt@fd.org

Dated March 24, 2022